```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
AVRAHAM ABADA,
TARA GREAVES, and
EUGENE RODRIGUES,                       MEMORANDUM AND ORDER

              Plaintiffs,               19-CV-3903(KAM)(VMS)
                                        19-CV-3904(KAM)(VMS)
         v.                             19-CV-3962(KAM)(VMS)

DELTA AIR LINES, INC.,

              Defendant.
----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

The plaintiffs in these related actions, Avraham Abada ("Mr. Abada"), Tara Greaves ("Ms. Greaves"), and Eugene Rodrigues ("Mr. Rodrigues," and together with Mr. Abada and Ms. Greaves, "Plaintiffs"),[1] brought federal, state, and local law discrimination claims against their former employer, Delta Air Lines, Inc. ("Delta" or "Defendant"). Plaintiffs, who are all represented by the same counsel, and Defendant agreed to have all three related cases addressed by a single motion to dismiss. Delta filed a motion to dismiss the three complaints pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 23.) For

---

[1] Mr. Abada brought case number 19-cv-3903. Ms. Greaves brought case number 19-cv-3904. Mr. Rodrigues brought case number 19-cv-3962. Unless it is indicated otherwise, all citations the docket throughout this Memorandum and Order are citations to the docket in Mr. Abada's case, 19-cv-3903.

1

the reasons that follow, Delta's motion to dismiss is GRANTED with respect to each of Plaintiffs' respective complaints.

## Background

Plaintiffs are former Delta employees who filed separate complaints in three separate cases. The three complaints, which contain virtually identical allegations regarding Delta's conduct, allege that Delta discriminated against them, either because of their religion or national origin, or because they associated with people of a certain religion or national origin.

By way of background, a benefit Delta offers certain of its employees is a travel companion pass. (ECF No. 19, Amended Complaint ("Am. Compl."), ¶ 19.) Delta's travel companion pass policy allows an employee to offer a travel companion pass to any family member or friend, allowing that person to travel on a Delta flight, with or without the employee. (*Id.*) Delta requires that the employee be "familiar" with any person to whom they provide a travel companion pass. (*Id.*) A person travelling on a travel companion pass may only travel for leisure, rather than for business purposes. (*Id.*)

In 2017, Plaintiffs were each initially suspended without pay by Delta, and then terminated, purportedly for violating Delta's travel companion pass policy. (*See* ECF No. 25, Memorandum in Opposition to Motion to Dismiss ("Opp."), at

2.) Mr. Abada identifies as being of Jewish, Hebrew, and Israeli descent, and alleges that he cooperated with Delta's investigation, and that he did not violate Delta's policy. (*Id.*) According to his allegations, Delta's actions were "focused more broadly to target Jewish and Israeli individuals." (Am. Compl. ¶ 30.) Ms. Greaves and Mr. Rodrigues, who were also investigated and then terminated for violating the policy, are not of Jewish, Hebrew, or Israeli descent, but allege that they were discriminated against because of their "association" with individuals of Jewish, Hebrew, or Israeli descent. (Opp. at 2.)

Plaintiffs' complaints contain allegations of anti-Semitic statements made by Delta employees toward Jewish employees, and anti-Semitic statements made by Delta employees toward Jewish passengers on flights to Israel. (Am. Compl. ¶ 17.) Plaintiffs allege that a particular Delta manager made derogatory statements toward a Jewish Delta employee, including, "[W]hy [are] you [J]ewish guys killing kids in Gaza[?]" and "Heil Hitler!" while regularly referring to the employee as a "[J]ewish guy." (*Id.*) Plaintiffs also allege that Delta managers and employees referred to a Delta flight to Israel as "Hell Aviv," and that the flight attendants working on the flight routinely harassed and criticized Jewish passengers. (*Id.*)

3

Further, according to the complaints, the discriminatory beliefs held by a number of Delta managers led to an effort within the company to target those employees who provided travel companion passes to Jewish individuals. Plaintiffs allege that a set of "talking points" was distributed among Delta managers that explained that managers "were targeting persons with 'interest in frequent travel to Tel Aviv'" for potential violations of the travel companion pass policy. (*Id.* ¶ 23.)

Plaintiffs' respective cases were each filed in July 2019. (*See* ECF No. 1, Complaint; Case No. 19-cv-3904, ECF No. 1; Case No. 19-cv-3962, ECF No. 1.) Plaintiffs brought discrimination claims under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (*See* Am. Compl. ¶¶ 41-60.) The three cases were marked as related. On February 14, 2020, with leave of the court, Plaintiffs filed amended complaints. (*See* Am. Compl.; Case No. 19-cv-3904, ECF No. 12; Case No. 19-cv-3962, ECF No. 12.[2]) Given the similarity of Plaintiffs' allegations, the parties agreed that briefing a single motion to

---

[2] It appears that Plaintiffs' counsel inadvertently filed Ms. Greaves's amended complaint in Mr. Rodrigues's case, rather than filing Mr. Rodrigues's amended complaint, an error which has not been corrected. Because Ms. Greaves's allegations are virtually identical to Mr. Abada's, the court assumes that Mr. Rodrigues's are identical as well.

4

dismiss all three actions would be the most efficient approach, and Delta moved to dismiss the three amended complaints. (*See* ECF No. 23, Motion to Dismiss; *see also* ECF No. 24, Memorandum in Support of Motion to Dismiss; ECF No. 26, Reply in Support of Motion to Dismiss.) Plaintiffs opposed the motion. (*See* Opp.) In their opposition, Plaintiffs "withdr[e]w their claims under Section 1981," leaving only their claims under Title VII, the NYSHRL, and the NYCHRL. (Opp. at 1.)

## Legal Standards

I. **Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The "court must accept as true all of the allegations contained in a complaint," but the court need not accept a plaintiff's "legal conclusions." *Id.* Where the factual allegations, even accepted as true, do not plausibly suggest

unlawful conduct, the plaintiff's complaint must be dismissed upon the defendant's motion. *Id.* at 679-80.

## II. Title VII

Under the *McDonnell Douglas* framework established by the United States Supreme Court, a plaintiff bringing a claim for disparate treatment under Title VII "must first establish a *prima facie* case of discrimination by showing: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent." *Fanelli v. New York*, 200 F. Supp. 3d 363, 370 (E.D.N.Y. 2016) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003)). "This burden is minimal and does not require specific evidence of discrimination." *Brown v. Baldwin Union Free Sch. Dist.*, 603 F. Supp. 2d 509, 514 (E.D.N.Y. 2009) (citing *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)). However, at the motion to dismiss stage, a plaintiff "must allege facts that allow the [c]ourt, in substance, to infer the essential elements of a *prima facie* case." *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 495 (E.D.N.Y. 2019).

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Id.* (quotation omitted). "Examples

6

of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (alternation and quotation omitted); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) ("A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.").

### III. New York State Human Rights Law

"Claims of disparate treatment under Title VII [and] the NYSHRL . . . are assessed using the [same] burden-shifting framework established by the Supreme Court in *McDonnell Douglas* . . . ." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209-10 (E.D.N.Y. 2014); *see also Hyek v. Field Support Servs., Inc.*, 461 F. App'x 59, 60 (2d Cir. 2012) (summary order).

### IV. New York City Human Rights Law

The NYCHRL makes it "unlawful for an employer or an employee or agent thereof" to discharge an employee based on, *inter alia*, the employee's race, religion, or national origin. N.Y.C. Admin. Code § 8-107(1)(a). It is also unlawful to discriminate against such person in "terms, conditions or privileges of employment." *Id.* Under the NYCHRL, "an employer

7

is strictly liable for the unlawful harassment of employees by their supervisors or managers, regardless of whether the harassment culminates in a tangible employment action." *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 657, 658 (E.D.N.Y. 2015). To sustain a claim under the NYCHRL, a plaintiff need not establish a materially adverse employment action. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013).

Although the NYCHRL was formerly construed to be coextensive with its federal and state counterparts, the law was amended in 2005 and requires an independent analysis. *Id.* at 109. Courts must construe the NYCHRL's provisions "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible[.]" *Id.* (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011)).

## Discussion

Although Plaintiffs alleged that the statements made by certain Delta employees created "a hostile and discriminatory work environment" (Am. Compl. ¶ 8), Plaintiffs acknowledge in their opposition to the motion to dismiss that they are *not* pursuing hostile work environment claims (Opp. at 7). Accordingly, Plaintiffs' claims are solely that they received disparate adverse treatment because of their religion or national origin, or because of their association with

8

individuals of a certain religion or national origin. In other words, Plaintiffs allege that they were investigated and terminated because of Defendant's discriminatory motivations.

The court will first address the sufficiency of Plaintiffs' allegations in the context of their Title VII and NYSHRL claims before turning to their claims under the NYCHRL, which requires a separate analysis.

**I. Claims Pursuant to Title VII and the New York State Human Rights Law**

There appears to be no dispute that each Plaintiff has pleaded sufficient plausible facts to meet first three requirements of a *prima facie* case of discrimination under the *McDonnell Douglas* framework established by the United States Supreme Court for analyzing claims under both Title VII and the NYSHRL. First, each Plaintiff either (1) was a member of a protected class based on their religion or national origin (Mr. Abada), or (2) alleged an association with individuals who were members of a protected class (Ms. Greaves and Mr. Rodrigues). *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) ("[A]n employer may violate Title VII if it takes action against an employee because of the employee's association with a person of another race."). Second, Defendant has not argued that any of the Plaintiffs were not qualified for their positions. Each Plaintiff worked for Delta for more than ten years (*see* Am.

9

Compl. ¶ 24), and so presumably each was qualified for his or her job. And third, each Plaintiff suffered an adverse action, as each was terminated from his or her position by Delta. Defendant argues that Plaintiffs cannot meet the fourth prong, because they have failed to allege sufficient facts for the court to draw an inference of discrimination, and that the reasons proffered by Delta for Plaintiffs' terminations (that each Plaintiff violated Delta's travel companion pass policy) was not a pretext for discrimination.

Plaintiffs allege that Delta managers made harassing and derogatory remarks to Jewish employees, and that Jewish passengers on Delta flights were "routinely" harassed by Delta employees. (*Id.* ¶ 17.) Plaintiffs further allege that "talking points" were distributed among Delta managers that showed an intent to target employees for investigation if those employees shared their travel companion passes with Jewish individuals. (*Id.* ¶ 23.)

The portions of these "talking points" cited by Plaintiffs, however, make no specific reference to individuals of Jewish, Hebrew, or Israeli descent. The complaints quote three fragments allegedly from the "talking points" which show that, presumably, Delta was conducting an investigation focused on: people with an "interest in frequent travel to Tel Aviv" or "certain individuals who live in the New York and Atlanta area

10

who appear to be connected in one or more ways," and the employees who "ha[d] possible ties to this group of people." (*Id.*) Plaintiffs assert in conclusory fashion that the "certain individuals" referred to in the document were Jewish, Hebrew, or Israeli individuals. The portions of the document Plaintiffs have quoted, however, do not support an inference that there was an intent to discriminate against people based on their religion or national origin. Those short excerpts only reference an investigation into employees providing travel companion passes to people living in New York and Atlanta for travel to Tel Aviv. They do not reference people of a particular religion or national origin at all, much less reference them in a derogatory manner that would suggest a discriminatory motive. *See Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) (summary order) (affirming dismissal where "Plaintiffs d[id] not, for instance, assert that any defendant referenced their religion or national origin, much less that they did so in a derogatory manner"). Merely because the people referenced in the document, living in New York or Atlanta with an interest in traveling to Tel Aviv, could be individuals of Jewish, Hebrew, or Israeli descent is not, on its own, sufficient for the court to infer that Delta was targeting employees who provided their travel companion passes to Jewish individuals "*because of*" those

11

employees' associations with people of a certain religion or national origin. *Holcomb*, 521 F.3d at 138 (emphasis added).

In addition to basing their allegations on portions of the "talking points" document, Plaintiffs also cite certain statements by Delta employees that were derogatory. For example, a Delta manager allegedly asked a Jewish employee, "[W]hy [are] you [J]ewish guys killing kids in Gaza[?]" and other Delta employees referred to the Delta flight to Israel as "Hell Aviv." (Am. Compl. ¶ 17.) Assuming the truth of these allegations, they are disturbing, and appear to reflect a significant animus on the part of certain Delta employees. What is crucially missing from the complaints, however, is any link between this alleged animus and the adverse actions taken against Plaintiffs. Plaintiffs do not allege that the specific employees who made the quoted derogatory remarks were involved in the investigations or terminations of Plaintiffs. "[V]erbal comments made by individuals not involved in making [an] adverse employment decision cannot themselves give rise to an inference of racial discrimination." *Anderson v. Hertz Corp.*, 507 F. Supp. 2d 320, 328 (S.D.N.Y. 2007), *aff'd*, 303 F. App'x 946 (2d Cir. 2008); *see Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 560 (S.D.N.Y. 2005) ("It is well settled that stray racial remarks made by persons not involved in making the adverse

12

employment decision are not sufficient to establish an inference of discrimination.").

Notably, as Defendant points out, the allegations in this case are nearly identical to those made in a case that was recently dismissed by Judge Pamela K. Chen. In *Fukelman v. Delta Air Lines, Inc.*, the plaintiffs similarly "allege[d] that Delta 'ha[d] created a culture of anti-Semitism and directed police type actions toward Jewish, ethnic Israeli and Hebrew speaking employees and passengers traveling on flights to Tel Aviv, Israel.'" No. 18-cv-2 (PKC)(PK), 2020 WL 4587496, at *2 (E.D.N.Y. Apr. 13, 2020), *report and recommendation adopted*, 2020 WL 2781662 (E.D.N.Y. May 29, 2020). In a report and recommendation that was subsequently adopted in full by Judge Chen, Magistrate Judge Peggy Kuo found that the same "talking points" that Plaintiffs cite in this case did "not support the allegation that employees who were members of the protected class were 'targeted' for investigation and discipline." *Id.* at *11. Further, Magistrate Judge Kuo found that the plaintiffs in *Fukelman* did "not provide any specific remarks or questions during the conduct of the investigation that were ethnically degrading or could be viewed as discriminatory."

Likewise, in this case, Plaintiffs have failed to link the alleged animus on the part of some of Delta's employees to the investigations and subsequent terminations of Plaintiffs.

13

Plaintiffs have provided no examples of remarks that raise an inference of discrimination made during the investigations, or by individuals involved in the investigations. Plaintiffs have also not alleged any facts tending to show that their respective uses of the travel companion passes were legitimate. And, although "[a]n inference of discrimination can arise from circumstances including . . . the more favorable treatment of employees not in the protected group," *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015), Plaintiffs have not alleged that other employees outside their protected group used their travel companion passes in a similar manner without being investigated and terminated.

In short, Plaintiffs have alleged no facts beyond unrelated comments made by Delta employees who were not involved in investigating Plaintiffs, and conclusory assertions that Plaintiffs were targeted because of their religion or national origin (or because of their association with individuals of a certain religion or national origin). Their allegations are insufficient to survive a motion to dismiss. *See Fukelman*, 2020 WL 4587496, at *12 ("To the extent these Plaintiffs rely on other comments that are ethnically disparaging, such as those by other flight attendants about Jewish passengers, no facts are alleged linking those comments to the disciplinary action, such that an inference of discriminatory motivation can be found.").

14

Even accepting all of Plaintiffs' allegations as true, that is, assuming that certain employees did make these degrading comments and Delta management did circulate a memo with the quoted language described above, Plaintiffs have not adequately alleged facts that plausibly state a claim that they were investigated and terminated as a result of Defendant's discriminatory motive.

Accordingly, Defendant's motion to dismiss is granted with respect to Plaintiffs' Title VII and NYSHRL claims.

## II. Claims Pursuant to the New York City Human Rights Law

The NYCHRL makes it "unlawful for an employer or an employee or agent thereof" to discharge an employee based on, *inter alia*, the employee's race, religion, or national origin. N.Y.C. Admin. Code § 8-107(1)(a). Although the NYCHRL was formerly construed to be coextensive with its federal and state counterparts, the NYCHRL was amended in 2005 and requires an independent analysis. *Mihalik*, 715 F.3d at 109. Courts must construe the NYCHRL's provisions "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible[.]" *Id.*

Even under the broader construction required by the NYCHRL, Plaintiffs cannot make out claims that their terminations were a result of unlawful discrimination. "As with [Plaintiffs'] federal and state discrimination claims, [they]

15

ha[ve] not shown that [they were] treated differently with respect to [their] termination because of any race or [origin]-based discriminatory motives harbored by individuals at [Defendant]." *Mauze v. CBS Corp.*, 340 F. Supp. 3d 186, 209 (E.D.N.Y. 2018), *adhered to on reconsideration*, 2019 WL 8137641 (E.D.N.Y. Jan. 23, 2019).

As discussed above, Plaintiffs rely only on allegations of comments unrelated to their individual cases and short fragments pulled from a single document. Construing the allegations as true and considering them broadly, there is still nothing in Plaintiffs' complaints that ties their terminations to a Delta employee's discriminatory motive. "[T]he NYCHRL is not a 'general civility code'" and a "plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110; *see Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (under the NYCHRL, "a plaintiff must still link the adverse employment action to a discriminatory motivation"). Plaintiffs have failed to plead any facts tending to show that a discriminatory motive was the reason for their terminations.

Accordingly, Defendant's motion to dismiss is also granted with respect to Plaintiffs' NYCHRL claims.

## Conclusion

For the reasons above, Defendant's motion to dismiss is GRANTED, and all three of the amended complaints are dismissed in their entirety.  Plaintiffs have failed to plausibly allege that they were terminated as a result of Delta's discriminatory intent, and thus Plaintiffs have not stated and cannot state a claim under Title VII, the NYSHRL, or the NYCHRL.  Plaintiffs were previously granted an opportunity to amend their complaints, but were not able to allege plausible facts to sustain their claims.  Thus, although plaintiffs may be granted leave to replead after a complaint is dismissed, the court declines to grant such leave here.

The Clerk of Court is directed to enter judgment in favor of Defendant in all three related cases, and to close the three cases.

**SO ORDERED.**

Dated:   Brooklyn, New York
         December 18, 2020

                                   _____/s/_____
                                   Hon. Kiyo A. Matsumoto
                                   United States District Judge